```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES RIVER INSURANCE COMPANY,

                    Plaintiff,

        -against-                                          MEMORANDUM OF
                                                           DECISION AND ORDER
                                                           12-CV-02706 (ADS)(GRB)
POWER MANAGEMENT, INC.,
                    Defendant.
-------------------------------------------------------X
```

FILED
CLERK
10/28/2014 3:27 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**Silverson, Pareres & Lombardi, LLP**
*Attorneys for the Plaintiff*
192 Lexington Avenue,
New York, NY 10016
      By:    James F. Scaffidi, Esq., Of Counsel

**Goldberg Segalla, LLP**
*Attorney for the Defendant*
200 Garden City Plaza, Suite 520
Garden City, NY 11530
      By:    Joanna M. Roberto, Esq., Of Counsel

**SPATT, District Judge**.

      By Order dated April 22, 2014, United States District Judge Leonard D. Wexler directed that the Clerk of the Court reassign this declaratory judgment action to the undersigned as related to <u>Pacific Indemnity Company v. Power Management Inc.</u>, Case No. 09-CV-5163 (the "Pacific Indemnity Company Action" or the "Related Action"), jury selection for which is currently scheduled for November 10, 2014.

      The Pacific Indemnity Company Action involves negligence and breach of contract claims brought by Pacific Indemnity Company ("Pacific Indemnity") against Power

Management Inc. ("PMI") arising out of alleged damage caused by the failure of an engine that PMI contracted to rebuild.

The above-captioned action is brought by PMI's insurance provider, the Plaintiff James River Insurance Company (the "JRI"), against PMI seeking a declaration that it has no duty provide a defense or indemnity to PMI under the subject insurance policy for the claims asserted in the Pacific Indemnity Company Action.

Presently before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 by JRI and a cross-motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 by PMI for an order declaring that (1) the "Damage to Your Product" exclusion in the subject insurance policy is inapplicable; (2) JRI cannot disclaim coverage on the basis of late notice; and (3) JRI is estopped from denying coverage.

For the following reasons, JRI's motion for summary judgment is granted in part and denied in part, and PMI's cross-motion for partial summary judgment is denied.

## I. BACKGROUND

Unless stated otherwise, the following facts are drawn from the parties' Rule 56.1 statements. Triable issues of fact are noted.

A. <u>The Parties</u>

JRI is a corporation duly organized and existing under the laws of the State of Ohio, with its principal place of business located in Virginia. JRI is engaged in the insurance business and is licensed to do such business in the State of New York.

PMI is a corporation duly organized and existing under the laws of the State of California with its principal place of business located in California. PMI is engaged in the business of,

among other things, the operation and management of power generation facilities and landfill gas control systems.

JRI issued to PMI a Commercial General Liability Policy, bearing Policy Number 00009740-2, effective May 9, 2007 through May 9, 2008 (the "Policy").

B. Procedural History

In late May or early June 2012, JRI commenced this declaratory judgment action seeking a declaration that it does not have a duty under the Policy to provide a defense to or indemnify PMI in the Pacific Indemnity Company Action. This action was originally assigned to District Court Judge Leonard D. Wexler.

On July 5, 2012, PMI answered and asserted a number of affirmative defenses. PMI also sought a declaration that JRI owes a duty under the Policy to defend and indemnify it in connection with the Pacific Indemnity Action.

Following the completion of discovery, on November 8, 2013, JRI filed a motion pursuant to Fed. R. Civ. P. 56 for summary judgment requesting a declaration that it has no duty under the Policy to provide a defense or indemnify PMI for the claims asserted in the Pacific Indemnity Company Action.

On April 22, 2014, Judge Wexler denied that motion without prejudice to renew it before this Court, newly-assigned to the case.

Thereafter, the parties filed letters concerning whether this action should be stayed pending the resolution of the Pacific Indemnity Company Action. In particular, PMI sought a stay on the ground that the resolution of the Pacific Indemnity Company Action would be dispositive of this case. JRI opposed a stay and asserted, among other arguments, that this action

only affected coverage issues rather than liability issues; that the outcome of the Pacific Indemnity Company Action would have no impact on the outcome of this action; and that the Pacific Indemnity Company Action awaited resolution of this action before proceeding forward to trial.

On May 2, 2014, this Court issued an order declining to stay this action, concluding that "before [JRI] expends considerable resources in connection with the Pacific Indemnity Company Action, the Court finds that a determination is needed as to whether [JRI] is responsible under the subject insurance policy to provide [PMI] with coverage in the event the [PMI] is found liable in the Pacific Indemnity Company Action." (Doc No. 39, at 2.) The Court directed that this action be tried before the Pacific Indemnity Company Action.

JRI subsequently re-filed its motion for summary judgment in accordance with the Individual Rules of this Court, and PMI cross-moved for partial summary judgment.

C. The Events Giving Rise to this Dispute

On or about February 18, 2008, Wehran Energy Corp. ("Wehran") purchased a power generation facility and landfill gas control system located in Brookhaven, New York from U.S. Energy Biogas ("USEB"). The product consisted of U.S. Energy's entire operations at Brookhaven and the two inoperable Deutz 620 engines located there. As there was no operational Duetz 620 engine, Brookhaven was not producing any energy. Wehran desired to produce energy, but instead of purchasing a new engine, Wehran chose to hire PMI to rebuild the Duetz 620 engine.

Later that month, Wehran orally contracted with PMI to rebuild and install one of the Deutz 620 engines at the Brookhaven facility. PMI alleges that this task was to be performed

4

alongside USEB. (See Thomas Reynolds ("Reynolds") Dep. at 14, 33; JRI Exh. D.) According to JRI, neither PMI nor Wehran subcontracted any portion of the work associated with the contract or the rebuild. (Fredrick Wehran ("Wehran") Dep. in the Related Action, at 108; JRI Exh. F; Pl. Exh. H.)

Under the oral agreement between PMI and Wehran, PMI agreed to rebuild one Deutz 620 engine located at the Brookhaven facility using a refurbished engine block and crankshaft provided by a third-party known as NRG. (Chapman Dep., at 28.)

On or about February 20, 2008, PMI sent Thomas Reynolds, a mechanic, to the Brookhaven facility to rebuild the engine. (Reynolds Dep., at 30, 55.) He was assisted by, among others, two USEB employees, Chris Palmer and Carl Christopherson.

According to JRI, the USEB employees were never compensated for their services during the engine rebuild process and their services were provided as a matter of goodwill to Wehran. (Steven Laliberty ("Laliberty") Dep., at 35-36; JRI Exh. E.) In addition, PMI did not bill for the services performed by the USEB employees that assisted in the engine rebuild process; rather, it only billed for the services that its employees performed at the Brookhaven facility. (See Chapman at 59-60.) PMI contends that, during the rebuild process, there was no one individual "in charge" and, instead, the project proceeded under a team-like atmosphere.

PMI states that USEB provided integral services in connection with the engine rebuilding process, including installation and torqueing of the front cover and vibration damper; installation of connecting rods; installation of piston and rose and torqueing of all rod bolts to specifications; installation and torqueing of head nuts; torqueing of all head bolds to specifications; and re-torquing of cylinder heads to specifications. (See Reynolds Dep., at 80, 82, 85, 91, 92, 96.) PMI

5

asserts that multiple people participated due to the extremely heavy nature of the equipment and strength required to perform some of the responsibilities. (See id. at 80, 81, 87, 87; Wehran Dep., at 77.)

At the time the team began work on the rebuild, an engine block was already present at the Brookhaven Landfill Facility. Wehran was advised that the engine had been reconditioned and it was recommended that the engine be replaced, not rebuilt. Nevertheless, PMI was instructed to use this engine block so that Wehran could save on costs. As a consequence, no warranty was provided for the engine rebuild process. The engine rebuild process lasted approximately three weeks and consisted of removing and replacing all the internal parts. According to PMI, it was required to utilize some newly purchased parts, as well as parts previously used and owned by Wehran. (See Laliberty Dep., at 20; Reynolds Dep., at 29, 53.) The new parts were ordered only after Frederick Wehran reviewed and approved them by way of a purchase order. (See Wehran Dep., at 85, 89.) JRI asserts that PMI removed the counterweights, and inspected, and re-installed them to verify compliance with Duetz specifications. (JRI Exh. G ("Failure Report") at 1.)

On March 5, 2008, PMI finished the major mechanical work and began the pre-startup process. (See Failure Report, at 2-3.) Once PMI completed the pre-startup phase, the engine was turned on, with zero pressure and allowed to rest idle for about fifteen minutes. (See Failure Report, at 2-3.) After fifteen minutes, PMI shut the engine, inspected it with an infrared gun, and then placed the engine back on idle for ten minutes, after which PMI shut it again. (Id.) The engine was then changed over to the new gas compressor and restarted. The engine was then placed online at 34% load for about fifteen minutes before it suffered "catastrophic failure." (Id.)

6

PMI states that the term "catastrophic failure" was used to describe the engine because the damage was extensive and the origin of the failure was unknown.

JRI asserts that, as a result of the "catastrophic failure," a rod blew out of the engine, the crankcase opened up and counterweights broke and oil and water covered the floor. (Failure Report, at 3.)

JRI further states that, after the engine suffered a "catastrophic failure," it took about seven hours to clean the oil and water up off the floor so an inspection could be made. (Failure Report, at 3.)

Subsequently, at Wehran's request, Reynolds prepared a failure report dated March 23, 2008 (Id.)

As a result of the engine failure, Wehran's insurer, Pacific Indemnity, provided insurance coverage to Wehran under its policy. Specifically, Wehran received $337,000 for the purchase of a new engine and $298,194 for loss of business income. (See Robert A. Link Dep., at 24, 26; PMI Exh. O.)

Pacific Indemnity, as subrogee of Wehran, then filed the related suit against PMI.

On April 6, 2009, PMI notified JRI by letter that PMI had received a letter from Pacific Indemnity with regard to the Related Action. (JRI Exh. O). JRI asserts that this was the first notice it received from PMI regarding the failure of the Deutz 620 engine located at the Brookhaven facility. (Edward Munsey Dep., at 25; JRI Exh. N; JRI Exh. O.)

Edward Munsey, Senior Claims Examiner for JRI, was assigned to investigate the failure of the Deutz 620 engine located at the Brookhaven facility. PMI claims that, by April 15, 2009,

7

Munsey knew that JRI had potential defenses to coverage in the "Your Work" exclusion to the Policy, as well as late notice. (See Claims Notes; Munsey Dep., at 34, 37.)

On April 23, 2009, Munsey spoke with Randall Chapman, a PMI official, to discuss the circumstances of the claim, and late notice was discussed. (See Claims Notes, Note Number 6; Munsey, 38-39.)

On or about May 8, 2009, JRI sent to PMI a reservation of rights letter based on the "Damage to Property"; "Damage To Your Produce"; and "Damage to Your Work" exclusions contained in the Policy and JRI reserved its rights under the Policy to disclaim coverage to PMI "at any point" for the Pacific Indemnity claims if it became clear that there was no coverage. (See JRI Exh. Q.)

JRI assigned the Sobel Law Group as the defense counsel to PMI in the Pacific Indemnity Action. However, JRI contends that, at that point, the facts concerning the March 5, 2008 failure of the Deutz 620 engine at Brookhaven were still unclear. Rather, JRI asserts that, on or about June 1, 2012, after reviewing depositions, summaries, discovery documents and expert reports served and filed in the Related Action, it became clear that there was no coverage for PMI under the Policy. (Munsey Dep., at 40.) This declaratory judgment action ensued.

## II. DISCUSSION

A. The Legal Standard on a Fed. R. Civ. P. 56 Motion for Summary Judgment

Summary judgment is granted when the "movant shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers

8

to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v.. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)(quoting Fed. R. Civ. P. 56(c)). If the movant does this successfully the burden shifts, requiring the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998). Summary judgment is granted only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 141 (2d Cir. 2012)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

Once a party moves for summary judgment, the non-movant must come forward with specific facts showing that a genuine issue exists to avoid the motion being granted. West-Fair Elec. Contractors v. Aetna Cas. & Surety Co., 78 F.3d 61, 63 (2d Cir. 1996); see also Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)(quoting Fed. R. Civ. P. 56(e)). Typically, a genuine issue of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see Vann v. New York City, 72 F.3d 1040, 1049 (2d Cir. 1995). In addition, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Finally, where "the sole question presented to the Court is the interpretation of a clear and unambiguous written agreement, the issue is one of law and may properly be decided by the Court upon a motion for summary judgment." Amin Realty, LLC v. Travelers Prop. Cas. Co., No. 05-CV-195 (RLM), 2006 WL 1720401, at *3 (E.D.N.Y. June 20, 2006)(citing Jakobson

Shipyard, Inc. v. Aetna Cas. & Sur. Co., 775 F. Supp. 606, 609 (S.D.N.Y. 1991), aff'd, 961 F.2d 387 (2d Cir. 1992)).

B. As to JRI's Alleged Duty to Defend and Indemnify PMI in the Pacific Indemnity Action

JRI and PMI present a variety of arguments in support of their respective motions for summary judgment. The Court addresses only those necessary for resolution of these motions.

"Under New York law [which the parties agree applies in this diversity action], it is axiomatic that the duty to defend is exceedingly broad and more expansive than the duty to indemnify." Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 424 (2d Cir.2002). "Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint [in the underlying action] to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased." Id. (internal quotation marks omitted). "An insurer must defend whenever the four corners of the complaint suggest — or the insurer has actual knowledge of facts establishing — a reasonable possibility of coverage." Id. (internal quotation marks omitted). "An insurer is relieved of the duty to defend only if 'there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" Allianz Ins. Co. v. Lerner, 416 F.3d 109, 115 (2d Cir. 2005)(quoting Servidone Constr. Corp. v. Sec. Ins. Co., 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985)).

"Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage." Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 218, 746 N.Y.S.2d 622, 774 N.E.2d 687 (2002). Thus, "[a]n insured

10

seeking to recover for a loss under any insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy." Gongolewski v. Travelers Ins. Co., 675 N.Y.S.2d 299, 299 (2d Dep't 1998)(internal quotation marks omitted). In order to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that could fairly be placed thereon." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006)(internal alteration and quotation marks omitted).

      1. As to Whether there was an "Occurrence" as that Term is Defined in the Policy

Here, the Policy covers an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." JRI argues that, under the Policy, the engine failure does not constitute an "occurrence," meaning the Policy does not apply and that coverage is not due from JRI.

Under New York law, "a construction contractor's faulty work resulting in failure of the structure does not constitute an 'occurrence.'" Illinois Nat. Ins. Co. v. Tutor Perini Corp., 11 CIV. 431 (KBF), 2012 WL 5860478, at *5 (S.D.N.Y. Nov. 15, 2012) reconsideration denied, 11 CIV. 431 KBF, 2013 WL 443956 (S.D.N.Y. Feb. 5, 2013) and aff'd sub nom. Metro. Transit Auth. v. Illinois Nat. Ins. Co., 564 F. App'x 618 (2d Cir. 2014); Baker Residential Ltd. P'ship v. Travelers Ins. Co., 10 A.D.3d 586, 782 N.Y.S.2d 249, 250 (1st Dep't 2004)("The motion court, aptly characterizing the underlying action as 'a classic faulty workmanship/construction contract dispute,' correctly held that the damages sought therein did not arise from an 'occurrence'

11

resulting in damage to property distinct from plaintiffs' own work product, as contemplated by the policy."); Transp. Ins. Co. v. AARK Constr. Grp., Ltd., 526 F. Supp. 2d 350, 356 (E.D.N.Y. 2007)("An insurer of a [Commercial General Liability] policy is not a surety for a construction contractor's defective work.").

Indeed, under New York law, a Commercial General Liability policy like the one involved here "does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product." George A. Fuller Co. v. U.S. Fidelity & Guar. Co., 200 A.D.2d 255, 259, 613 N.Y.S.2d 152,155 (1st Dep't 1994)(emphasis added); Aquatectonics, Inc. v. The Hartford Cas. Ins. Co., 10–CV–2935 (DRH)(ARL), 2012 WL 1020313, at *5 (E.D.N.Y. Mar. 26, 2012). "Thus, an 'occurrence' of property damage under a CGL policy cannot exist where a general contractor's negligent acts only affect the property owner's economic interest in the building." AARK Const. Grp., Ltd., 526 F. Supp. 2d at 357 (quotation marks omitted).

In the Related Action, Pacific Indemnity alleges that PMI's faulty workmanship in connection with the rebuild and installation of the Deutz 620 engine at the Brookhaven facility caused damage to the Deutz 620 engine, and nothing else. Further, Pacific Indemnity seeks damages solely in connection with the costs incurred in remedying those defects. On this basis, then, the engine failure does not constitute an "occurrence" and coverage under the Policy is not triggered. See Pavarini Constr. Co. v. Cont'l Ins. Co., 304 A.D.2d 501, 759 N.Y.S.2d 56 (1st Dep't 2003); Aauatectonics, Inc., 2012 WL 1020313, at *6.

PMI argues that issues of material fact exist as to whether the work was performed by PMI and whether the products were PMI products. However, even if that were true, that argument does not salvage PMI's claim that JRI is obligated under the Policy to provide coverage for the engine failure.

The Court has determined that the property damage to the engine did not arise out of an "occurrence" within the Policy provision. Therefore, it need not determine whether any exclusions from coverage would apply. See AARK Const. Grp., 526 F. Supp. 2d at 356 n. 2.

2. As to Whether JRI is Equitable Estopped from Denying Coverage to PMI

PMI also argues that, even if the engine failure did not constitute an "occurrence" within the meaning of the Policy, JRI is estopped from denying coverage to PMI because JRI undertook to defend PMI, but waited more than 15 months before disclaiming coverage despite having all the necessary facts to do so. JRI counters that equitable estoppel is inapplicable because (1) it timely reserved its rights under the Policy and (1) it did not take any action inconsistent with the denial of coverage.

As to JRI's first contention, JRI is essentially arguing that it was unreasonable for PMI to rely on JRI for its defense after it received the reservation of rights letter. This assertion is without merit. As set forth in Mount Vernon Fire Ins. Co. v. J.J.C. Stucco & Carpentry Corp., 95-CV-5202, 1997 WL 177864 (E.D.N.Y. Apr. 3, 1997): "An insurer's reservation of rights, though it may be relevant to the issue of waiver, is irrelevant to the question of estoppel." Id. at *3 (citations and quotation marks omitted).

As to JRI's second contention, the Court first briefly summarizes the law of equitable estoppel in the insurance context.

13

"[A]n insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." Bluestein & Sander v. Chi. Ins. Co., 276 F.3d 119, 122 (2d Cir. 2002). In this regard, equitable estoppel "operate[s] to create obligations, which are independent of the insurer's coverage obligations under the policy, based on the conduct of the insurer on which an insured relies. This is a widely acknowledged exception to the general rule that estoppel cannot be used to create coverage where it would not otherwise exist." Illinois Union Ins. Co. v. Midwood Lumber & Millwork, Inc., 13-CV-2466 (ARR)(JO), 2014 WL 639420, at *12 (E.D.N.Y. Feb. 18, 2014)(citing 7 Couch on Ins. § 101:9 (3d ed. 2013).

Where an insurer's delay is attributable to its undertaking of an investigation of coverage, the delay is considered reasonable. Winchester Fine Arts, 337 F. Supp. 2d at 451. Indeed, it is reasonable for an insurer to investigate prior to disclaiming coverage so that the disclaimer is based on "concrete evidence" and does not result in "piecemeal disclaimers." Public Serv. Mut. Ins. Co. v. Harlen Hous. Assocs., 7 A.D.3d 421, 777 N.Y.S.2d 438, 440 (1st Dep't 2004). "To suggest that an insurance company has waived its right to assert a defense when it undertakes an investigation is contrary to both common sense and well-established law." Travelers Indem. Co. of Am. v. S. Gastronom Corp., 06-CV-5536 (SLT)(RER), 2010 WL 1260202, at *12 (E.D.N.Y. Mar. 3, 2010)(citation omitted), report and recommendation adopted, 06-CV-5536 (SLT)(RER), 2010 WL 1292289 (E.D.N.Y. Apr. 1, 2010) aff'd sub nom. Travelers Indem. Co. of Am. v. Estate of Zeygermakher ex rel. Sidon, 427 F. App'x 30 (2d Cir. 2011). "Delaying a disclaimer

of coverage for investigative reasons is only unreasonable when the basis for denying coverage was or should have been apparent before the onset of the delay." Id.

In this case, JRI maintains that from May 8, 2009 until the commencement of this action on or about June 1, 2012, it was investigating whether there is coverage to PMI under the policy for the claims asserted in the Pacific Indemnity Action. According to JRI, no one document made it reasonably apparent that no coverage existed for PMI; rather, a review of the totality of the documents presented to JRI was necessary to determine whether coverage existed. In this regard, JRI emphasizes the fact that three companies, namely USEB, Wehren, and PMI, worked on the engine, resulting in conflicting information about which entity performed which tasks. Also, uncertainty was magnified by the lack of a written contract between those entities. JRI further notes that it only initially received deposition summaries from the Pacific Indemnity Action, and did not receive actual deposition transcripts until the commencement of this action.

However, the Court finds that material issues of fact exist as to whether JRI unreasonably delayed in bringing the instant action and, therefore, effectively disclaiming coverage under the Policy for the engine failure. In particular, according to PMI, JRI had sufficient information to disclaim on the basis of late notice by April 15, 2009 – that is, it knew the date of the alleged "occurrence" and the date of notice, yet it did not disclaim until 36 months later in late May or early June 2012 when it commenced this declaratory judgment action. In this regard, JRI's agent, Munsey, spoke with Chapman on April 23, 2009 concerning reasons why the 2008 "occurrence" was not reported until 2009. When asked at his deposition, Munsey could not recall why the May 8, 2009 reservation of rights letter did not include late notice as a potential basis for disclaimer.

15

Further, JRI may be estopped by virtue of its failure to disclaim coverage for the product exclusions until 15 months after it was known to them by, at the latest, September 9, 2011. PMI points out that the thrust of JRI's disclaimer was based on two expert reports prepared for Pacific Indemnity in the Relation Action, which were served on PMI on February 14, 2011 as part of Pacific Indemnity's Rule 26(a)(2) disclosures in the Related Action, and that JRI had an opportunity to analyze these reports no later than September 9, 2011. PMI also highlights that JRI seeks to disclaim coverage in part on the Failure Report in PMI's notice of "occurrence" dated April 9, 2009.

However, even if JRI unreasonably delayed in disclaiming coverage, PMI must also demonstrate that it suffered prejudice as a result of that delay, which is generally a question of fact. Adams v. Chi. Ins. Co., 49 F. App'x 346, 349 (2d Cir. 2002)(citing Greater N .Y. Sav. Bank v. Travelers Ins. Co., 173 A.D.2d 521, 570 N.Y.S.2d 122, 123 (2d Dep't 1991)). Equitable estoppel "has as its basis the detrimental reliance suffered by the insured . . . As such, an estoppel will lie only if the insured has demonstrated that it has been prejudiced by the insurance carrier's actions." Phila. Indem. Ins. Co. v. City of N.Y., No. 09 Civ. 10432 (PGG), 2011 WL 1237586, at *7 (S.D.N.Y. Mar. 24, 2011)(quoting Nat'l Indem. Co. v. Ryder Truck Rental, Inc., 230 A.D.2d 720, 721, 646 N.Y.S.2d 169 (2nd Dep't 1996)).

Furthermore, "[i]n recent cases, the New York courts have explicitly rejected the premise that there is a presumption of prejudice where the insurer assumes control of the insured's defense and have held that '[p]rejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered.'" Illinois Union Ins. Co., 2014 WL 639420, at *13 (citing Federated Dep't Stores, Inc. v. Twin City Fire

Ins. Co., 28 A.D.3d 32, 807 N.Y.S.2d 62, 68 (1st Dep't 2006); accord Yoda, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 88 A.D.3d 506, 931 N.Y.S.2d 18, 21 (1st Dep't 2011)(applying estoppel where, due to untimely disclaimer, insured did not timely implead another party and allowed its file to become inactive); see also Phila. Indem. Ins. Co., 2011 WL 1237586, at *8 (refusing to apply estoppel where the insureds argued that they were prejudiced by the mere loss of control of their defense where the insurer's chosen counsel represented them for eight months prior to the disclaimer).

Indeed, "the [New York] Court of Appeals has only found estoppel in cases where, by the time the insurer attempted to avoid liability under the policy, the underlying litigation against the insured had reached a point where the course of the litigation had been fully charted." 206–208 Main St. Assocs., Inc. v. Arch Ins. Co., 106 A.D.3d 403, 965 N.Y.S.2d 31, 34 (1st Dep't 2013); compare 206–208 Main St. Assocs., 965 N.Y.S.2d at 35 (no estoppel where the insured admitted litigation was in an "early phase"), and O'Dowd v. Am. Sur. Co. of N.Y., 3 N.Y.2d 347, 165 N.Y.S.2d 458, 144 N.E.2d 359, 363 (1957)(no summary judgment based on estoppel where the disclaimer was two years prior to the trial absent further evidence of prejudice) with Brooklyn Hosp. Ctr. v. Centennial Ins. Co., 258 A.D.2d 491, 685 N.Y.S.2d 267 (2nd Dep't 1999)(there was estoppel where the underlying action was already on the trial calendar), U.S. Fid. & Guar. Co. v. N.Y. Susquehanna & W. Ry. Corp., 275 A.D.2d 977, 713 N.Y.S.2d 624, 625–26 (4th Dep't 2000)(there was estoppel where the disclaimer occurred six days before the trial and on the eve of the settlement), Hartford Ins. Grp. v. Mello, 81 A.D.2d 577, 437 N.Y.S.2d 433, 435 (2nd Dep't 1981)(there was estoppel where there was a two-year delay and the case was already on

the trial calendar), and Gerka v. Fid. & Cas. Co., 251 N.Y. 51, 167 N.E. 169 (1929)(there was estoppel where the insurer defended the insured through trial, appeal and settlement).

PMI argues principally that prejudice exists by virtue of the fact that JRI's continued assumption of PMI's defense in the Pacific Indemnity Action denied PMI the right to control its own defense. Pointing to the docket for the Pacific Indemnity Action, JRI counters that, at the time the disclaimer was issued, the Pacific Indemnity Action was still in its infancy.

However, "[b]ecause the question of the existence of prejudice requires a highly fact-sensitive analysis, it is not one that can be determined on the record presently before the court. Although [PMI] cannot simply rely on a presumption that [it] is prejudiced by the mere fact of [JRI] assuming its defense, [PMI] ha[s] submitted additional facts raising a question as to whether [it] was prejudiced in its defense of the Underlying Action[]." Illinois Union Ins. Co., 2014 WL 639420, at *14. These include the allegation that the selected defense counsel failed to obtain the services of an independent expert to examine the damage; to depose Pacific Indemnity's experts; and to inspect the engine itself. See Mount Vernon, 1997 WL 177864

The impact, if any, is unclear as to the fact that PMI's assigned defense counsel in the Pacific Indemnity Action has and continues to defend PMI in that case. Absent clear guidance in the case law on this factor, the Court will permit the jury to consider this factor in its prejudice calculus.

### III. CONCLUSION

For the reasons explained above, JRI's motion for summary judgment is granted in part and denied in part and PMI's motion for partial summary judgment is denied. There is no genuine issue of material fact that the accident giving rise to the Related Action is not covered by

the Policy as it does not qualify as an "Occurrence" as defined by the Policy.   However, genuine fact issues remain as to whether JRI may be equitably estopped from disclaimer.

The parties are directed to file an amended joint proposed pretrial order consistent with the foregoing within 5 days of the date of this order.  A non-jury trial on the issue of estoppel is scheduled for November 10th 2014, November 12th 2014, and November 13th, 2014 at 10:00 a.m each day.  Any further dates will be decided at the trial.

**SO ORDERED**
Dated: Central Islip, New York
October 28, 2014

_Arthur D. Spatt_ _
ARTHUR D. SPATT
United States District Judge